**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Norfolk Division)**

| | |
|---|---|
| **DELPHINUS ENGINEERING, INC.**<br>650 Baldwin Tower Boulevard<br>Eddystone, PA 19022-1366<br><br>**Plaintiff,**<br>**v.**<br><br>**ADVANCED INTEGRATED TECHNOLOGIES, LLC**<br>5741 Bayside Road, Suite 109<br>Virginia Beach, VA 23455<br><br>**and**<br><br>**KERRY T. SLANE**<br>1026 Brandon Quay<br>Chesapeake, VA 23320<br><br>**and**<br><br>**LARRY CUNNINGHAM**<br>166 Hemlock Street<br>Hertford, NC 27944-8882<br><br>**and**<br><br>**DREW PEARSON**<br>826 Pine Tree Court<br>Newport News, VA 23608<br><br>**and**<br><br>**COREEN RAYBURN**<br>1208 Graylyn Road<br>Virginia Beach, VA 23464<br><br>**and**<br><br>**QED SYSTEMS, INC.**<br>4646 North Witchduck Road<br>Virginia Beach, VA 23455 | **Civil Action No.: 2:10cv423** |

**Defendants.** )
______________________________________________)

## AMENDED COMPLAINT

Plaintiff Delphinus Engineering, Inc. ("Delphinus") hereby respectfully files this Amended Complaint against Defendants Advanced Integrated Technologies, LLC ("AIT"), Kerry T. Slane ("Slane"), Larry Cunningham ("Cunningham"), Drew Pearson ("Pearson"), Coreen Rayburn ("Rayburn") and QED Systems, Inc. ("QED") (collectively, "Defendants"). In support of this Amended Complaint, Plaintiff alleges upon information and belief as follows:

### Parties

1. Plaintiff Delphinus is a privately-held engineering company organized and existing under the laws of the state of Delaware, with its principal place of business located at 650 Baldwin Tower Boulevard, Eddystone, Pennsylvania, 19022-1366. Delphinus performs a variety of services for the federal government, including naval installation/alteration work in general and submarine installation/alteration work specifically for the benefit of the Naval Surface Warfare Center, Carderock Division ("NSWCCD") – a division of the United States Navy.

2. Defendant AIT is a start-up limited liability company founded by Carl Spraberry and organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 5741 Bayside Road, Suite 109, Virginia Beach, Virginia 23455. Prior to hiring defendant Slane, AIT had never itself, or through any of its subcontractors, performed any submarine installation/alteration work for the NSWCCD, or otherwise.

3. Defendant Slane is a resident of Virginia who resides at 1026 Brandon Quay, Chesapeake, Virginia, 23320. Slane is a former employee of Delphinus, and is currently employed by AIT. After Slane became employed by AIT, AIT began performing submarine

installation/alteration work for the benefit of the United States Navy; specifically for the NSWCCD.

4. Defendant Cunningham is a resident of North Carolina who resides at 166 Hemlock Street, Hertford, North Carolina, 27944-8882. Cunningham is a former employee of Delphinus, and is currently employed by AIT.

5. Defendant Pearson is a resident of Virginia who resides at 826 Pine Tree Court, Newport News, Virginia, 23608. Pearson is a former employee of Delphinus and is currently employed by AIT.

6. Defendant Rayburn is a resident of Virginia who resides at 1208 Graylyn Road, Virginia Beach, Virginia, 23464. Rayburn is a former employee of Delphinus and is currently employed by AIT.

7. Defendant QED is a privately-held corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located at 4646 North Witchduck Road, Virginia Beach, Virginia, 234555. After Slane began his employment with AIT, AIT entered into a subcontract with QED pursuant to which AIT began performing submarine installation/alteration work for the NSWCCD under QED's prime contract with the NSWCCD.

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

9. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship between Delphinus and each of the Defendants, and the amount in controversy exceeds $75,000.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because five of the Defendants reside within this judicial district. Venue is also proper because (i) each of the parties have engaged in business in this judicial district, and (ii) a substantial part of the events giving rise to the claims at issue occurred in this judicial district.

## Statement of Facts

### A. Slane, Cunningham, Pearson and Rayburn are bound by Confidentiality Agreements and Employee Computer, Computer Network and Internet Access and Use Policy agreements with Delphinus.

11. Slane was employed by Delphinus as an Operations Manager in Delphinus' Marine Services Division where he worked for almost three years, from July 16, 2007 to March 1, 2010. As a condition of his employment, Delphinus and Slane entered into an Employee Proprietary Information, Confidentiality, Innovation and Development Agreement ("Slane Confidentiality Agreement") on July 16, 2007. Also as a condition of his employment, Slane entered into an Employee Computer, Computer Network and Internet Access and Use Policy agreement with Delphinus ("Slane Computer Agreement") on July 16, 2007. A copy of both the Slane Confidentiality Agreement and the Slane Computer Agreement is attached as Exhibit 1.

12. Cunningham was employed by Delphinus as a Senior Project Manager in Delphinus' Marine Services Division where he worked for nearly three years, from August 13, 2007 to July 1, 2010. As a condition of his employment, Delphinus and Cunningham entered into an Employee Proprietary Information, Confidentiality, Innovation and Development Agreement ("Cunningham Confidentiality Agreement") on August 13, 2007. Also as a condition of his employment, Cunningham entered into an Employee Computer, Computer Network and Internet Access and Use Policy agreement with Delphinus ("Cunningham

Computer Agreement") on August 13, 2007. A copy of both the Cunningham Confidentiality Agreement and the Cunningham Computer Agreement is attached as Exhibit 2.

13. Pearson was employed by Delphinus as a Senior Project Engineer in Delphinus' Marine Services Division where he worked for over two years, from August 27, 2007 to December 18, 2009. As a condition of his employment, Delphinus and Pearson entered into an Employee Proprietary Information, Confidentiality, Innovation and Development Agreement ("Pearson Confidentiality Agreement") on August 27, 2007. Also as a condition of his employment, Pearson entered into an Employee Computer, Computer Network and Internet Access and Use Policy agreement with Delphinus ("Pearson Computer Agreement") on August 27, 2007. A copy of both the Pearson Confidentiality Agreement and the Pearson Computer Agreement is attached as Exhibit 3.

14. Rayburn was employed by Delphinus as a Quality Assurance Compliance Manager in Delphinus' Marine Services Division where she worked for over two and one-half years, from October 1, 2007 to April 19, 2010. As a condition of her employment, Delphinus and Rayburn entered into an Employee Proprietary Information, Confidentiality, Innovation and Development Agreement ("Rayburn Confidentiality Agreement") on October 1, 2007. Also as a condition of her employment, Rayburn entered into an Employee Computer, Computer Network and Internet Access and Use Policy agreement with Delphinus ("Rayburn Computer Agreement") on October 1, 2007. A copy of both the Rayburn Confidentiality Agreement and the Rayburn Computer Agreement is attached as Exhibit 4. (The Slane, Cunningham, Pearson, and Rayburn Confidentiality Agreements are together referred to as the "Confidentiality Agreements" and the Slane, Cunningham, Pearson, and Rayburn Computer Agreements are together referred to as the "Computer Agreements.")

15. Pursuant to the Computer Agreements, Slane, Cunningham, Pearson and Rayburn agreed that they had a responsibility to use Delphinus' computer systems in a "professional, lawful and ethical manner" and that abuse or unauthorized use of Delphinus' computer system could result in "disciplinary action, including possible termination of employment and civil and/or criminal liability." (Exs. 1-4, Computer Agreements.)

16. Pursuant to the Computer Agreements, Slane, Cunningham, Pearson and Rayburn agreed that they were "prohibited from sending, transmitting, or otherwise distributing proprietary information, data, trade secrets or other confidential information belonging to [Delphinus]" without Delphinus' express authorization. Slane, Cunningham, Pearson and Rayburn also agreed that unauthorized dissemination of this material "may result in severe disciplinary action, including possible termination of employment, as well as substantial civil and criminal penalties under state and federal laws, including Economic Espionage laws." (Exs. 1-4, Computer Agreements.)

17. Pursuant to the Confidentiality Agreements, Slane, Cunningham, Pearson, and Rayburn expressly agreed, among other things, that the nature of their employment with Delphinus created "a relationship of confidence and trust between the [e]mployee and [Delphinus] with respect to Proprietary Information." (Exs. 1-4 Confidentiality Agreements ¶ (b).)

18. Pursuant to their respective Confidentiality Agreements, Slane, Cunningham, Pearson, and Rayburn each expressly agreed, among other things, that they would not disclose any of Delphinus' proprietary information to anyone for any purpose except to Delphinus' employees in furtherance of its business. (Exs. 1-4 Confidentiality Agreements ¶ (c).) Further, Slane, Cunningham, Pearson, and Rayburn agreed that they would "not at any time, whether

during or after the termination of [their] employment by [Delphinus], disclose to any person or entity any of the Proprietary Information of [Delphinus] and [they would] not or permit any person or entity to examine and/or make copies and/or transmit any documents . . . which contain or are derived from any Proprietary Information, whether prepared by [them or either of them] or otherwise coming into [their] possession or control." (Id.) Slane, Cunningham, Pearson, and Rayburn also agreed that they would "not make any use of Proprietary Information except in the discharge of [their] duties as an employee of [Delphinus]." (Id.)

19. Pursuant to the Confidentiality Agreements, Slane, Cunningham, Pearson, and Rayburn expressly agreed, among other things, that "all documents, files, records, literature, operational and product manuals, forms . . . and other physical property, whether or not pertaining to the Proprietary Information, furnished to [any of them] by [Delphinus] or produced by [any of them] or others in connection with their employment by [Delphinus] shall be and remain the sole property of [Delphinus], and shall be returned to [Delphinus] immediately as and when requested by [Delphinus]." (Exs. 1-4 Confidentiality Agreements ¶ (d).) Slane, Cunningham, Pearson, and Rayburn further agreed that "[e]ven if [Delphinus] does not specifically request, [they] shall return and deliver all such property to [Delphinus] upon termination of the Agreement for any reason, and [they] will not take with them or transmit to any other person or third party any such property or any reproduction or copy of such property upon termination." (Id.)

**B. Delphinus assigns Slane, Cunningham and Pearson to key management positions related to its Submarine Alteration Contracts.**

20. Slane became Operations Manager for Delphinus' Marine Services Division and also operated as the Program Manager for the submarine installation/alteration work Delphinus performed for the NSWCCD customer. As Operations Manager and Program Manager, Slane

had in his possession copies of and otherwise had access to confidential and proprietary information relating to Delphinus' marine services operations generally, and specifically, program and project materials of Delphinus and its Navy customer, including confidential and proprietary information relating to Delphinus' installation/alteration work in general and specifically submarine installation/alteration work including financial information, pricing data, cost estimates, proposals, Delphinus' work procedures for tasks, employee qualifications, salary information, Quality Assurance Workbooks ("QA Workbooks"), and other confidential and proprietary information located on Delphinus' computer system.

21. Delphinus assigned Cunningham to be one of Delphinus' Senior Project Managers for the submarine installation/alteration work Delphinus performed for its NSWCCD customer. As Project Manager, Cunningham had access to Delphinus' proprietary project materials such as QA Workbooks, work procedures for tasks, proposals and other confidential and proprietary materials located on Delphinus' computer system.

22. Delphinus assigned Pearson to be one of Delphinus' Senior Project Engineers for the submarine installation/alteration work Delphinus performed for its NSWCCD customer. As such, Pearson had in his possession copies of, and otherwise had access to confidential and proprietary information relating to Delphinus' marine services operations generally, and specifically, program and project materials of Delphinus and its Navy customer, including confidential and proprietary information relating to Delphinus' installation/alteration work in general and specifically submarine installation/alteration work including financial information, pricing data, cost estimates, proposals, Delphinus' work procedures for tasks, employee qualifications, salary information, Quality Assurance Workbooks ("QA Workbooks"), and other confidential and proprietary information located on Delphinus' computer system.

23. Delphinus assigned Rayburn to be one of Delphinus' Quality Assurance Compliance Managers for the submarine installation/alteration work Delphinus performed for its NSWCCD customer. As such, Rayburn also had access to Delphinus' confidential and proprietary materials such as QA Workbooks, salary information, personnel records, qualifications data, Delphinus work procedures, internal organizational structure and other confidential and proprietary materials located on Delphinus' computer system.

**C. <u>Pearson resigns and Slane's employment with Delphinus is terminated</u>**

24. In the spring and summer of 2009, Slane began directing numerous other Delphinus employees to download and personally back-up electronic files maintained on Delphinus' computer system in violation of the express terms of the Computer Agreements and Confidentiality Agreements each such employee had executed in favor of Delphinus and contrary to their fiduciary duties to Delphinus.

25. The purpose of this request was for these employees to retain the materials personally for future use in anticipation of these employees eventually leaving Delphinus as a group to undertake employment with another firm performing similar work.

26. On December 8, 2009, Pearson submitted a letter of resignation to Delphinus. Prior to leaving Delphinus and as requested by Slane, Pearson downloaded electronic files containing confidential and proprietary materials from the Delphinus computer system and retained them for use following his resignation, thereby violating the Pearson Computer Agreement, the Pearson Confidentiality Agreement, and his fiduciary duties to Delphinus.

27. On March 1, 2010, Delphinus informed Slane that his employment with Delphinus was terminated effective March 1, 2010. A true and correct copy of that letter is attached as Exhibit 5. (Ex. 5, Slane Termination Letter.) Delphinus also informed Slane that

Delphinus expected Slane to return to Delphinus all of Delphinus' or Delphinus' customer equipment, documents, property, and information. (Id.) Further, Delphinus reminded Slane of his responsibilities under the Slane Confidentiality Agreement. (Id.)

28. Slane failed and refused to return to Delphinus its confidential and proprietary information. Specifically, upon his departure Slane took and remains in possession of Delphinus' confidential and proprietary information including, but not limited to: (i) QA Workbooks; (ii) financial and estimating information; and (iii) highly sensitive communications between the NSWCCD customer and Delphinus' senior management, all in violation of his Confidentiality Agreement, Computer Agreement, and his fiduciary duties to Delphinus.

**D. Pearson, Slane, and Rayburn become employed by AIT**

29. Sometime prior to April 2010, Pearson accepted employment with AIT.

30. On April 5, 2010, Slane accepted employment with AIT.

31. AIT hired Slane based on Slane's representation that he could obtain and perform for AIT naval installation/alteration work in general and specifically submarine installation/alteration work for the benefit of the NSWCCD. Slane also represented to AIT that Slane could convince Delphinus employees to resign their employment with Delphinus and to work for AIT, and thereby obtain the requisite personnel to perform submarine installation/alteration work for the benefit of the NSWCCD.

32. After Slane began his employment with AIT, AIT entered into a subcontract with QED pursuant to which AIT began performing Ship Alteration 4604 installation/alteration work for the NSWCCD under QED's prime contract with the NSWCCD.

33. Between April and September 2010, in cooperation with Slane and AIT, other Delphinus employees resigned from Delphinus and took jobs with AIT. Prior to their departure,

former Delphinus employees downloaded electronic files from their Delphinus computers and retained these files for their use and the use of AIT after leaving Delphinus in violation of the terms of their Computer Agreements, Confidentiality Agreements, and their fiduciary duties to Delphinus.

34. By way of example, Defendant Rayburn gave notice of her resignation to Delphinus on April 5, 2010, the same date that Defendant Slane began his employment with AIT. On April 7, 2010, while still employed by Delphinus, Rayburn, in cooperation with Slane and AIT, downloaded thousands of electronic files from Delphinus' computer system and retained those files for use by AIT. Many of those files contain confidential and proprietary information belonging to Delphinus.

35. AIT and Slane have also improperly requested and obtained the cooperation of other former and current Delphinus employees to access and download confidential and proprietary information from Delphinus' computer system for AIT's use. As a result, AIT has illegally obtained access to thousands of Delphinus electronic files, many of which contain confidential and proprietary information including, but not limited to, cost-estimating data, work procedures, contract proposals, QA Workbook information, training and certification information, personnel records, salary histories, supplier data, materials purchase data, and other information of significant value to Delphinus and its business operations.

36. AIT has used, and continues to use, Delphinus' confidential and proprietary information to obtain and/or perform submarine installation/alteration work awarded by and/or for the benefit of the NSWCCD. These confidential and proprietary materials include cost and pricing data, work procedures, materials purchase and supplier data, contract proposal information, work procedures, weld procedures, training files, personnel files, salary histories,

QA Workbooks (relating to Delphinus' installation/alteration work in general and specifically Delphinus submarine installation/alteration work, including the 4604 installations/alterations) and other sensitive and proprietary information developed by Delphinus over time at great cost and expense to the company.

**E. Delphinus notifies AIT of its Confidentiality Agreements with its employees.**

37. On June 25, 2010, Delphinus notified AIT that Delphinus was aware that AIT "has hired [former] Delphinus employees and is in the process of soliciting others, specifically to work on existing or potential submarine projects, some of which Delphinus is now working on or has worked on recently." (Ex. 6, Delphinus notification letter to AIT.) Delphinus further notified AIT that the Delphinus employees who AIT solicited from Delphinus and who are currently employed by AIT "executed Employee Proprietary Information, Confidentiality, Innovation and Development Agreement[s]." (Id.) Delphinus expressly informed AIT that upon the termination of their employment with Delphinus, each of those employees was specifically reminded "of their legal obligations under such Agreement[s], and the prohibitions contained therein, which would result in legal liability not only for them individually, but for their prospective employers as well." (Id.) Delphinus further informed AIT that the former Delphinus employees hired by AIT, as well as those employees Delphinus believes AIT is actively soliciting, "had access to the most sensitive and protectable aspects of Delphinus' business and such information can be used by such individuals in concert with AIT and others in AIT's acquisition of new work and the fulfillment and performance of such work." (Id.) Delphinus then advised AIT "that such conduct is unacceptable and legally actionable." (Id.)

**F. AIT ignores Delphinus' notice and continues to knowingly and improperly solicit Delphinus employees and use Delphinus' confidential and proprietary information to unfairly compete with Delphinus**

38. Notwithstanding Delphinus' June 25, 2010 letter, QED, AIT, Pearson, Slane, and Rayburn continue to engage in unfair competition by improperly using Delphinus' confidential and proprietary information to unfairly compete with Delphinus for installation/alteration work awarded by or for the benefit of the NSWC, including submarine installation/alteration work.

39. AIT and Slane improperly solicited Delphinus' employees under false pretenses using, among other things, selected information contained in confidential communications between Delphinus' senior management and the NSWCCD customer in direct violation of Slane's Computer Agreement, Confidentiality Agreement, and fiduciary duties to Delphinus. For example, AIT and Slane used such confidential information to solicit Cunningham away from Delphinus to work for AIT.

40. On June 28, 2010, Cunningham notified Delphinus that he was resigning from his employment with Delphinus effective July 16, 2010. (See Ex. 7, Memo from Cunningham.) Cunningham had prior to that time accepted a job offer from AIT. Cunningham negotiated his job offer with AIT while supervising a Delphinus' submarine project in Groton, Connecticut. On June 28, 2010, Cunningham represented to Delphinus that he would, for the remainder of his employment with Delphinus, "continue supporting [his] current tasks with total dedication to Delphinus and [its] customers." (Id.)

41. Nevertheless, AIT and Slane improperly arranged with Cunningham – while he was employed by Delphinus as a Senior Project Manager – for him to solicit additional Delphinus employees in an effort to encourage them to resign their employment with Delphinus and accept employment with AIT.

42. As a result, while he was still employed by Delphinus, Cunningham, individually and in concert with AIT and Slane, solicited Delphinus employees in an effort to encourage them

to resign their employment with Delphinus and accept employment with AIT. These efforts included falsely representing to other Delphinus employees that Delphinus intended to abandon its submarine installation/alteration work and that all such work would go to AIT.

43. On July 1, 2010, Delphinus terminated Cunningham's employment with Delphinus for cause.

44. On July 9, 2010, Delphinus sent Cunningham a certified letter in which Delphinus informed Cunningham that his employment with Delphinus was terminated for cause effective July 2, 2010. A true and correct copy of that letter is attached as Exhibit 8. (Ex. 8, Cunningham Termination Letter.) Delphinus also informed Cunningham that Delphinus expected Cunningham to return to Delphinus immediately all of Delphinus' or Delphinus' customer equipment, documents, property, and information. (Id.) Further, Delphinus reminded Cunningham of his responsibilities under the Cunningham Confidentiality Agreement. (Id.) Delphinus expressly advised Cunningham that his "responsibilities continue beyond [his] employment with Delphinus." (Id.) Cunningham refused and failed to accept that certified letter.

**G. Delphinus has suffered irreparable harm as a result of Defendants' improper conduct.**

45. Delphinus has been – and continues to be – irreparably harmed as a result of Defendants' improper conduct. Specifically, Delphinus has suffered loss of human resources, technical information and expertise, revenue, and profits as a direct result of Defendants' continued misuse of Delphinus' confidential and proprietary information. Because Defendants are using Delphinus' confidential and proprietary information to unfairly compete with Delphinus, it is impossible to determine the full extent of the potential losses that Delphinus will

likely sustain in the future. Further, as a direct result of their improper conduct, Defendants will gain an unfair advantage in competing with Delphinus for such business.

46. By way of example, Delphinus' weld procedures – which are believed to be among the data stolen by Defendants – are estimated to have cost at least $450,000 to develop and have approved for use on submarine installation/alteration work. Similarly, Delphinus presently has approximately 42 approved Quality System Procedures for submarine installation/alteration work believed to be among the data stolen by the Defendants with an estimated development cost of more than $175,000. Moreover, the stolen information appears to include Delphinus' estimating data such as employee labor rates and indirect cost information, the estimated value of which is approximately $700,000. These are only a fraction of the electronic files illegally pirated from Delphinus' computer system by the Defendants. The cost to Delphinus to develop this information and the potential harm to its business for competitors such as AIT, QED, and perhaps others to be in possession of this information is far in excess of these figures.

**Count I (Violation of Virginia Uniform Trade Secrets Act)**
**AGAINST ALL DEFENDANTS**

47. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 46 as if set forth in their entirety.

48. Delphinus has taken reasonable efforts to maintain the secrecy of its confidential and proprietary information including limiting access of that information to only select employees and requiring employees to sign both Computer Agreements and Confidentiality Agreements.

49. Defendants have stolen Delphinus' information and records including, but not limited to, Delphinus' cost information for individual employees, indirect cost data, QA

Workbooks, weld procedures, Quality System Procedures, pricing data, supplier data, proposals, cost information, and technical data. Defendants improperly copied that and other information and records from Delphinus' computers and are using such information in furtherance of their business dealings. Such actions constitute a misappropriation of trade secrets and other improper activity within the meaning and in violation of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, et. seq. (the "Act").

50. Defendants' misappropriation and wrongful conduct was willful and malicious.

51. Defendant AIT is likewise liable for the conduct of Defendants Pearson, Slane, Cunningham and Rayburn under the doctrine of respondeat superior.

52. Delphinus has been – and continues to be – irreparably harmed as a result of Defendants' improper conduct. Specifically, Delphinus has suffered – and continues to suffer – loss of business, revenue, and human resources as a direct result of Defendants' continued misuse of Delphinus' trade secrets. Because Defendants are using Delphinus' trade secrets to unfairly compete with Delphinus, it is impossible to determine the magnitude of the total harm – and to quantify such harm – that Delphinus will likely sustain to its ability to perform its submarine installation/alteration work, including the real possibility that Delphinus will lose such work in its entirety.

53. In addition to damages under the Act, unless restrained and enjoined by this Court, Defendants will continue their nefarious activities and thereby continue to cause immediate and irreparable injury to Delphinus for which Delphinus has no adequate remedy at law. Indeed, left unchecked, Defendants' improper conduct could lead to the loss of a naval installation/alteration work, as well as the loss of key human and proprietary technical assets.

Further, as a direct result of their improper conduct, Defendants will gain an unfair advantage in competing with Delphinus for such business.

54. The likelihood of harm to Defendants if injunctive relief is granted is minimal given that Defendants have no right to use Delphinus' trade secrets to unfairly compete with Delphinus or otherwise. Therefore, the benefit to Delphinus in obtaining injunctive relief far outweighs the potential harm to Defendants if this Court were to grant injunctive relief.

55. There exists a strong likelihood that Delphinus will succeed on the merits of its claim given the Defendants' conduct and the express terms of the Confidentiality Agreements, the Computer Agreements, and the Act.

56. The public interest is best served by granting injunctive relief because the public is always best served if blatant wrongdoers are enjoined from continuing improper activities. Simply put, Delphinus is faced with a continuing wrong that must be immediately stopped.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment that:

(i) awards damages against each of the Defendants, jointly and severally, in excess of $1,325,000 under the Act;

(ii) awards punitive damages under the Act against each of the Defendants, jointly and severally, in the amount of $350,000;

(iii) awards attorneys' fees under the Act against each of the Defendants, jointly and severally, in an amount to be determined at trial;

(iv) temporarily, preliminarily, and permanently enjoins Defendants, any of their agents, employees and/or all other persons, firms or corporations, acting or claiming to act on any of their behalf, or in concert with Defendants (a) from using any of Delphinus' confidential

and/or proprietary information for any purpose, and (b) from disclosing any trade secret information to any other persons including, but not limited to, customers, contract partners, competitors and the general public;

(v) temporarily enjoins Pearson, either directly or indirectly, from performing any submarine installation/alteration work for the benefit of the NSWCCD or the U.S. Navy for a period of not less than 12 months;

(vi) temporarily enjoins Cunningham, either directly or indirectly, from performing any submarine installation/alteration work for the benefit of the NSWCCD of the U.S. Navy for a period of not less than 12 months;

(vii) temporarily enjoins Slane, either directly or indirectly, from performing any submarine installation/alteration work for the benefit of the NSWCCD of the U.S. Navy for a period of not less than 12 months;

(viii) temporarily enjoins Rayburn, either directly or indirectly, from performing any submarine installation/alteration work for the benefit of the NSWCCD or the U.S. Navy for a period of not less than 12 months;

(ix) requires all Defendants to return all trade secret information misappropriated by Defendants and currently in their possession; and

(x) grants Delphinus such other and further relief as the Court may deem just and proper including, but not limited to, expenses incurred by Delphinus relating to this action in accordance with the Act.

**Count II (Conversion)**
**AGAINST DEFENDANTS PEARSON, SLANE, CUNNINGHAM, RAYBURN AND AIT**

57. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 56 as if set forth in their entirety.

58. Defendants Pearson, Slane, Cunningham, Rayburn and AIT have wrongfully exercised control and authority over Delphinus' confidential and proprietary information in violation of Delphinus' rights under the Computer Agreements, the Confidentiality Agreements and Virginia law.

59. The Defendants' actions constituted a conversion of property belonging to Delphinus.

60. The Defendants are liable to Delphinus for any and all damages sustained by it as a result of the Defendants' conversion.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against each of the Defendants, jointly and severally, in an amount of at least $1,325,000 and to award such other and further relief as this Court may deem appropriate.

**Count III (Breach of Contract)**
**AGAINST PEARSON, SLANE, CUNNINGHAM AND RAYBURN**

61. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 60 as if set forth in their entirety.

62. Pearson, Slane, Cunningham and Rayburn breached the Computer Agreements and Confidentiality Agreements by (i) copying, disclosing and using Delphinus' confidential or proprietary information in furtherance of AIT's and QED's businesses, and (ii) failing and otherwise refusing to return to Delphinus immediately after their employment with Delphinus was terminated all documents, files, records, literature, operational and product manuals, forms, and other physical property, whether or not pertaining to the proprietary information, furnished to Defendants by Delphinus or produced by Defendants or others in connection with their

employment by Delphinus. Consequently, Pearson, Slane, Cunningham and Rayburn are liable to Delphinus for any and all damages sustained by it as a result of that breach.

63. As a result of Defendants' breaches of their respective Computer Agreements and Confidentiality Agreements, Delphinus has incurred and continues to incur substantial monetary damages.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against Defendants Slane, Cunningham, Pearson and Rayburn, jointly and severally, in an amount of at least $1,325,000, and granting Delphinus such other and further relief as the Court may deem just and proper including, but not limited to, costs and expenses incurred by Delphinus relating to this action.

**Count IV (Tortious Interference with Contract and Business Expectancy) AGAINST AIT, SLANE AND QED**

64. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 63 as if set forth in their entirety.

65. QED, AIT, and Slane had knowledge of the existence of Slane's, Cunningham's, Pearson's, and Rayburn's contractual relationship and business expectancy with Delphinus.

66. Employers of former Delphinus employees such as AIT, who knowingly allow those employees to violate the terms of their respective Confidentiality Agreement and Computer Agreement or otherwise conspire with those employees to violate the terms of such Agreements, are liable to Delphinus for any and all damages sustained by it as a result of the employee's breach. Further, employers or others who knowingly use confidential and proprietary information of Delphinus are liable to Delphinus for any and all damages sustained by it as a result of the employee's breach.

67. Companies such as QED that benefit from a former Delphinus employee's breach of the Confidentiality Agreement or Computer Agreement, who knowingly allow that employee to violate the terms of those Agreements or otherwise conspire with that employee to violate the terms of those Agreements, are liable to Delphinus for any and all damages sustained by it as a result of the employee's breach. Further, companies such as QED who knowingly use confidential and proprietary information of Delphinus are liable to Delphinus for any and all damages sustained by it as a result of the employee's breach.

68. With AIT's and/or QED's knowledge, consent and cooperation, Slane, Cunningham, Pearson and Rayburn breached the Computer Agreements and Confidentiality Agreements by (i) copying, disclosing and using Delphinus' confidential or proprietary information in furtherance of AIT's and QED's businesses, and (ii) failing and otherwise refusing to return to Delphinus immediately after their employment with Delphinus was terminated all documents, files, records, literature, operational and product manuals, forms, and other physical property, whether or not pertaining to the proprietary information, furnished to them by Delphinus or produced by them or others in connection with their employment by Delphinus.

69. AIT and/or QED have used – and continue to use – Delphinus' confidential and proprietary information to unfairly compete with Delphinus. Specifically, AIT and/or QED have used – and continue to use – Delphinus' confidential and proprietary information to improperly solicit and hire Delphinus employees and to obtain and perform naval installation/alteration work awarded by and for the benefit of the NSWCCD customer. Further, AIT and/or QED have used – and continue to use – Delphinus' QA Workbooks, weld procedures, Quality System

Procedures, pricing data, supplier data, training information and other records in furtherance of AIT's and QED's businesses.

70. Slane intentionally interfered with Delphinus' Computer Agreements and Confidentiality Agreements with Pearson, Cunningham, Rayburn and others by inducing and/or causing Pearson, Cunningham, Rayburn and others to breach those agreements. As a result, Delphinus has incurred and continues to incur substantial monetary damages.

71. AIT and/or QED intentionally interfered with Delphinus' Computer Agreements and Confidentiality Agreements with Pearson, Slane, Cunningham, Rayburn and others by inducing and/or causing them to breach those agreements. AIT is also liable for the actions of Slane under the doctrine of respondeat superior. As a result, Delphinus has incurred and continues to incur substantial monetary damages.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against AIT, QED, and Slane, jointly and severally, in an amount of at least $1,325,000, and granting Delphinus such other and further relief as the Court may deem just and proper including, but not limited to, costs and expenses incurred by Delphinus relating to this action.

**Count V (Breach of Fiduciary Duty)**
**AGAINST ALL DEFENDANTS**

72. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 71 as if set forth in their entirety.

73. Defendants Pearson, Slane, Cunningham and Rayburn owed a fiduciary duty to Delphinus to act in Delphinus' best interest during their employment with the company and to maintain the secrecy of Delphinus' confidential and proprietary information both during and after their employment with the company.

74. Cunningham breached his fiduciary duty to Delphinus by working with Slane and AIT to harm Delphinus. Specifically, while he was employed by Delphinus, Cunningham solicited Delphinus employees to leave Delphinus' employment and to join AIT.

75. Pearson, Slane, Cunningham and Rayburn breached their fiduciary duties to Delphinus by copying and using Delphinus' confidential and proprietary information in violation of the terms of their respective Computer Agreements, Confidentiality Agreements and their duties under Virginia law.

76. As a result of Pearson's, Slane's, Cunningham's and Rayburn's breaches of their fiduciary duties to Delphinus, Delphinus has incurred and continues to incur substantial monetary damages.

77. Defendant AIT is responsible for the breaches of fiduciary duty committed by Defendants Pearson, Slane, Cunningham and Rayburn under the doctrine of respondeat superior in that such actions were for the benefit of AIT who possessed the ability to direct and control these individuals, and as a result of such activities, AIT was unjustly enriched by the Defendants' actions.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against Defendants, jointly and severally, in an amount of at least $1,325,000, and granting Delphinus such other and further relief as the Court may deem just and proper including, but not limited to, costs and expenses incurred by Delphinus relating to this action.

**Count VI (Civil Conspiracy to Violate the Terms of the Computer Agreements and Confidentiality Agreements, Unfairly Compete with Delphinus, and to Breach Fiduciary Duties)**
**AGAINST ALL DEFENDANTS**

78. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 77 as if set forth in their entirety.

79. AIT, QED, Slane, Pearson, Cunningham and Rayburn together combined to cause the breach of Pearson's, Slane's, Cunningham's and Rayburn's Computer Agreements, Confidentiality Agreements and fiduciary duties.

80. Beginning in roughly the spring of 2009, the Defendants have together cooperated in the pirating of confidential and proprietary information from Delphinus' computer system. These efforts have included joint cooperation to access and obtain unauthorized downloads of Delphinus' proprietary and confidential information for the use of AIT and QED in furtherance of their business interests.

81. Defendant Slane, acting on behalf of AIT and QED, has secured the cooperation of Defendants Cunningham and Rayburn, as well as other current and former employees of Delphinus, to access Delphinus' computer systems and obtain downloads of proprietary and confidential information for the use and benefit of AIT and QED.

82. Defendant Slane, in his individual capacity, also secured the cooperation of Defendant Pearson to access Delphinus' computer systems and obtain downloads of proprietary and confidential information for the use of both Slane and Pearson.

83. Defendants Slane, Pearson, Cunningham and Rayburn have individually cooperated with AIT in the dissemination of confidential and proprietary information from Delphinus to AIT.

84. Defendants have used – and continue to use – Delphinus' confidential and proprietary information to unfairly compete with Delphinus. Specifically, Defendants have used – and continue to use – Delphinus' confidential and proprietary information to (i) unfairly and

improperly solicit and hire Delphinus employees, and (ii) to obtain and perform submarine installation/alteration work awarded by and for the benefit of the NSWCCD customer.

85. In the summer of 2010, Defendants AIT, Slane and Cunningham also combined for the unlawful purpose of having Cunningham improperly solicit Delphinus employees to work at AIT while Cunningham was still a Delphinus employee in violation of Cunningham's fiduciary duties to Delphinus.

86. AIT, QED, Pearson, Slane, Cunningham and Rayburn combined to accomplish an unlawful purpose – specifically, to willfully and maliciously injure Delphinus' business by breaching the fiduciary duties owed to Delphinus by its former employees as well as the Computer Agreements and Confidentiality Agreements through the improper copy, dissemination and use of Delphinus' confidential and proprietary information to unfairly compete with Delphinus. As a result, Delphinus has incurred and continues to incur substantial monetary damages.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against Defendants, jointly and severally, in an amount of at least $1,325,000, plus treble damages, and granting Delphinus such other and further relief as the Court may deem just and proper including, but not limited to, attorneys fees, costs and expenses incurred by Delphinus relating to this action.

**Count VII (Civil Conspiracy to Induce Cunningham to Breach his Fiduciary Duty to Delphinus) AGAINST QED, AIT, CUNNINGHAM, AND SLANE**

87. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 86 as if set forth in their entirety.

88. During his employment with Delphinus, Cunningham owed a fiduciary duty to Delphinus to act in the best interest of Delphinus.

89. While Cunningham was employed by Delphinus, Cunningham, AIT, Slane, and/or QED conspired to harm Delphinus. Specifically, during the summer of 2010 and while Cunningham was employed by Delphinus, Cunningham, AIT, Slane, and/or QED combined and agreed to (i) have Cunningham solicit Delphinus employees to leave Delphinus' employment and to join AIT, and (ii) use Delphinus' confidential and proprietary information in direct violation of Cunningham and Slane's Computer Agreements, Confidentiality Agreements, and fiduciary duties to Delphinus.

90. AIT, Slane, Cunningham, and/or QED combined to accomplish an unlawful purpose – specifically, to willfully and maliciously injure Delphinus' business by using Cunningham, who at the time was a Delphinus employee, to improperly solicit Delphinus employees to leave Delphinus' employment and to join AIT.

91. As a result of this conspiracy, Delphinus has incurred and continues to incur substantial monetary damages.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against AIT, Slane, Cunningham, and QED, jointly and severally, in an amount of not less than $1,325,000, plus treble damages, and granting Delphinus such other and further relief as the Court may deem just and proper including, but not limited to, costs and expenses incurred by Delphinus relating to this action.

## Count VIII (Negligent Hiring)
## AGAINST AIT

92. Delphinus incorporates by reference the allegations set forth in paragraphs 1 through 91 as if set forth in their entirety.

93. AIT had a duty to employ reasonable care in the hiring of its personnel generally, and specifically to determine the nature and extent of any contractual or fiduciary obligations owed by former Delphinus employees to Delphinus, as well as to take reasonable steps to insure that it did not improperly benefit from any breach of the obligations owed by these former employees to Delphinus.

94. At the time it chose to employ Pearson, Slane, Rayburn, Cunningham, and other former Delphinus employees, AIT had actual or implied knowledge that they were bound by the Computer Agreements and the Confidentiality Agreements, the Virginia Uniform Trade Secrets Act, and their fiduciary duties at common law not to copy, disclose or use confidential and proprietary information belonging to Delphinus.

95. AIT failed to conduct a reasonable investigation to determine the extent of these former Delphinus employees' obligations to Delphinus and to determine if any actions by those employees constituted a violation of those obligations.

96. It was reasonably forseeable that AIT's hiring of these employees would pose a threat of injury to Delphinus in the form of piracy and theft of confidential and proprietary data and that such information could be improperly used by those individuals for AIT's benefit.

97. As a direct and proximate result of AIT's actions and/or inactions, Delphinus has been injured in that it has lost exclusive use and knowledge of sensitive, confidential and proprietary information of great value to the company and has had that information transmitted to a competitor which places Delphinus at a disadvantage in the marketplace.

**WHEREFORE**, Delphinus respectfully requests that this Honorable Court enter a judgment in favor of Delphinus and against AIT in an amount of at least $1,325,000, and granting Delphinus such other and further relief as the Court may deem just and proper

including, but not limited to, costs and expenses incurred by Delphinus relating to this action.

## DEMAND FOR JURY TRIAL

Plaintiff, Delphinus Engineering, Inc. hereby demands trial by jury on all issues so triable.

**DATED: November 22, 2010**

**Respectfully submitted,**

**DELPHINUS ENGINEERING, INC.**

By Counsel:

/s/ *James J. Faughnan*

James J. Faughnan, VSB #31222
Fred Mendicino, VSB # 34474
SEEGER FAUGHNAN MENDICINO, P.C.
21355 Ridgetop Circle, Suite 110
Dulles, Virginia 20166
Telephone: (571) 434-7590
Facsimile: (571) 434-9006
Email: faughnan@sfmlawfirm.com
mendicino@sfmlawfirm.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of November, I will electronically file the foregoing Amended Complaint with the Clerk of the Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following file users:

**Attorneys for Defendants QED Systems, Inc. and Advanced Integrated Technologies, LLC**
Christopher A. Abel, Esq.
Michael J. Gardner, Esq.
Dawn L. Serafine, Esq.
Troutman Sanders LLP
150 West Main Street, Suite 1600
Norfolk, Virginia 23510
Telephone: (757) 640-0004
Facsimile: (757) 687-7510
Email: chris.abel@troutmansanders.com
mike.gardner@troutmansanders.com
dawn.serafine@troutmansanders.com

**Attorneys for Defendant Kerry T. Slane**
Lisa A. Bertini, Esq.
Hyojin Bae, Esq.
Bertini O'Donnell & Hammer, PC
999 Waterside Drive, Suite 1010
Norfolk, Virginia 23510
Telephone: (757) 670-3868
Facsimile: (757) 670-3865
Email: lbertini@bohlaw.net
hbae@bohlaw.net

**Attorney for Defendant Larry Cunningham**
James R. Theuer, Esq.
JAMES R. THEUER, PLLC
555 E. Main Street, Suite 1410
Norfolk, VA 23510
Email: jim@theuerlaw.com

/s/ *James J. Faughnan*
James J. Faughnan, VSB #31222
Fred Mendicino, VSB # 34474
SEEGER FAUGHNAN MENDICINO, P.C.
21355 Ridgetop Circle, Suite 110
Dulles, Virginia 20166
Telephone: (571) 434-7590
Facsimile: (571) 434-9006
Email: faughnan@sfmlawfirm.com
mendicino@sfmlawfirm.com